IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                              |   |                        |
|------------------------------|---|------------------------|
|                              | * |                        |
| ROBIN D. GROVE,              | * |                        |
|      Plaintiff,              | * |                        |
|          v.                  | * | CIVIL NO.: WDQ-07-1442 |
| ROBERT L. EHRLICH, JR.,      | * |                        |
| ET AL.,                      | * |                        |
|      Defendants.             | * |                        |
|                              | * |                        |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Robin D. Grove, has sued Robert L. Ehrlich, Jr., Kendl P.
Philbrick, and the State of Maryland for: (1) unlawful employment
termination based on political affiliation in violation of (a)
the First Amendment, and (b) Article 40 of the Maryland
Declaration of Rights (Counts I and II); and (2) 42 U.S.C. § 1983
(Count III).

Pending is a motion by Defendants for summary judgment, and
motions by Grove to remand, or if summary judgment is granted,
for certification of his state law claims, and for leave to file
a surreply.  For the following reasons, Defendants' motion will
be granted, and Grove's motions will be denied.

I.   Background

Grove was employed by the Technical and Regulatory Services
Administration ("TARSA"), one of five Administrations of the
Maryland Department of the Environment ("MDE"), from August 1999

until his dismissal in January 2003.  Second Am. Compl. at 2;[1]
Defs.' Mem. Supp. Summ. J. Ex. 1.  From 1999 to 2001 he served as
TARSA's Deputy Director, and from 2001 to his dismissal he served
as TARSA's Director.  Second Am. Compl. at 2; Defs.' Mem. Supp.
Summ. J. Ex. 1.

On January 11, 2003, Grove received a letter from Governor-
elect Ehrlich's[2] transition team notifying him of his termination
upon Ehrlich's January 15, 2003 swearing-in.  Second Am. Compl.
at 2; Pl.'s Opp'n Mem. Summ. J. Ex. 4.  Grove requested Governor
Ehrlich and Acting MDE Secretary Philbrick to reconsider his
termination, and on April 3, 2003, met with Secretary Philbrick
to discuss his termination.  Second Am. Compl. at 2.  On May 19,
2003, Grove's request for reinstatement was denied.

On September 10, 2003, Grove sued Governor Ehrlich and
Secretary Philbrick in the Circuit Court for Baltimore City.
Discovery disputes occupied much of the next several years, and
the Court of Appeals of Maryland decided in 2007 that the circuit
court had improperly allowed discovery of certain privileged
documents.  *Ehrlich v. Grove*, 396 Md. 550, 914 A.2d 783 (Md.
2007).  On April 3, 2007, Grove amended his complaint to add the
State of Maryland as a party.  On May 16, 2007, Grove amended his

---

[1] On May 16, 2007, Grove filed his second amended complaint
in the Circuit Court for Baltimore City.  Paper No. 7.  All
references are to the second amended complaint unless otherwise
noted.

[2] Ehrlich was succeeded as Governor by Martin J. O'Malley on
January 17, 2007.

complaint a second time to include a § 1983 claim, and Defendants removed the case to federal court on May 31, 2007.

II.  Motion to Remand

Grove argues that the Court should remand the case to the Circuit Court for Baltimore City, or in the alternative, decline to exercise supplemental jurisdiction over Grove's state law claims.  Grove relies on two theories for remand: (1) the removal statute and abstention doctrine demonstrate that federal courts may decline to exercise jurisdiction; and (2) there are exceptional circumstances, including unresolved discovery disputes and novel and complex issues of state law, that counsel against a federal court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

A. Federal Court Discretion to Exercise Jurisdiction

Grove contends that the Court's duty to exercise jurisdiction over the case is not absolute.  Specifically, Grove says that 28 U.S.C. § 1441(c) and the abstention doctrine permit federal courts to decline jurisdiction in certain cases. Defendants counter that neither § 1441(c) nor the abstention doctrine is applicable to Grove's claims.

Under § 1441(c), a federal court may remand "matters in which State law predominates" when a "separate and independent claim or cause of action" within federal question jurisdiction is joined with nonremovable claims or causes of action.  28 U.S.C. § 1441(c).  Pendent claims, those state law claims that are so related to federal question claims that they "form part of the

3

same case or controversy," 28 U.S.C. § 1367(a), are not subject to § 1441(c).  *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001).

Grove acknowledges that his state law claims are pendent to his § 1983 claim, but argues that his reference to § 1441(c) demonstrates that in some situations, federal courts may decline jurisdiction.  The removal statute provides for remand in limited circumstances, but Grove's claims do not meet the statutory criteria.  As Grove's claims are not "separate and independent," § 1441(c) has no bearing on whether the Court should remand this case.

Grove's reliance on the abstention doctrine is similarly misplaced.  Federal courts may abstain from exercising jurisdiction over a case when there are pending state proceedings, and the plaintiff seeks equitable relief, *see, e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971), or when there is an unclear area of state law that should be decided by state courts.  *See, e.g.*, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  Without identifying a particular abstention case as representative of his suit, Grove argues that the complexity of his state claims requires the Court to remand the entire case.  Although the parties are still engaged in a discovery dispute over privileged documents, there is no pending state court proceeding and Grove primarily seeks legal relief.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727-28 (1996) (abstention is inappropriate when the only relief sought is money

4

damages).  Accordingly, the abstention doctrine does not compel a remand.

B. Exceptional Circumstances

Relying on 28 U.S.C. § 1367 and principles of comity and judicial efficiency, Grove asserts that the unresolved discovery disputes over privileged documents and the complex and novel state law claims in his suit justify remand.  Grove explains that it would be "extremely rare" for a federal court to exercise jurisdiction over a case in such exceptional circumstances. Pl.'s Mem. Supp. Remand at 19.  Defendants argue that § 1367 does not provide a basis for remand of all Grove's claims and that the law governing Grove's state law claims is clear.  Defendants further contend that Grove's reliance on discovery disputes as support for remanding his claims is premature and irrelevant. Defs.' Opp'n Mem. Remand at 12-13.

Under § 1367, federal courts may decline supplemental jurisdiction if "the claim raises a novel or complex issue of State law" or "in exceptional circumstances, [with] other compelling reasons for declining jurisdiction."  28 U.S.C. §§ 1367(c)(1), (4).  Section 1367 does not allow a federal court to decline jurisdiction over federal question claims.  *Id.* § 1367(a).  Thus, Grove's contention that § 1367 provides the Court with a basis for remanding all his claims is without merit.

Grove argues, however, that the discovery dispute over privileged documents is an exceptional circumstance under § 1367. Grove contends that although *Ehrlich v. Grove* answered some

5

questions about the scope of discovery in this case, the Court of Appeals left unresolved important Maryland privilege issues. Grove also argues that judicial economy is not served by repeating the Baltimore City Circuit Court's extensive *in camera* review of privileged documents.

Courts should assess the "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise pendent jurisdiction over state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988). Grove acknowledges that his § 1983 claim and state law claims are not separate and independent from each other. Grove also cites no authority that a discovery dispute should preclude a federal court from exercising jurisdiction over a case properly before it. Although the circuit court performed an *in camera* review of privileged documents, there is no contention that this Court must also review these documents to decide this motion. Rather than bifurcated proceedings in state and federal courts, assessing Grove's claims in one forum promotes judicial efficiency, convenience, and fairness to the parties.

Grove also argues that the question whether Governor Ehrlich and Secretary Philbrick are immune from suit presents novel and complex issues of state law that should be resolved in state court. Grove claims that although the Court of Appeals in *Lee v. Kline*, 384 Md. 245, 863 A.2d 297 (Md. 2004), determined that state officials acting within the scope of their employment are covered by the Maryland Tort Claims Act ("MTCA"), Md. Code Ann.,

State Gov't 12-101 *et seq.* (West 2006), for alleged
constitutional torts, the *Lee* court did not decide whether free
speech violations were covered.

"Article 40 is *in pari materia* with the First Amendment,"
*WBAL-TV Div.*, *Hearst Corp. v. State*, 300 Md. 233, 243 n.4, 477
A.2d 776, 783 n.4 (Md. 1984), thus Grove's First Amendment and
Article 40 claims can be analyzed together.  Whether Governor
Ehrlich and Secretary Philbrick are covered by qualified immunity
is secondary to determining whether the First Amendment or
Article 40 was violated by Grove's discharge.  As discussed in
Part III, Grove's discharge did not violate the First Amendment,
therefore his argument concerning the scope of the MTCA's
qualified immunity coverage is moot.


III. Motion for Summary Judgment

Defendants seek summary judgment on Grove's claims because
he was not constitutionally protected from dismissal for
political affiliation.  Governor Ehrlich and Secretary Philbrick
also contend that if the Court finds a constitutional violation,
(1) they are entitled to qualified immunity on Grove's § 1983
claim and (2) the MTCA confers immunity on Grove's state law
claims.  The State of Maryland also argues that Grove's claims
against the State are barred by the statute of limitations and
sovereign immunity.

A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there

is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 324. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

B. Dismissal for Political Affiliation

1. Standard

The First Amendment[3] and Article 40 of the Maryland Declaration of Rights[4] prohibit governmental action that unduly

---

[3] The First Amendment provides, in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. The First Amendment is applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940).

[4] Article 40 provides: "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought

restricts citizens' freedom of speech and association.  The First Amendment prohibits terminating certain public employees for their political affiliations.  *Elrod v. Burns*, 427 U.S. 347, 360 (1976) (plurality opinion).  But state and federal governments may dismiss individuals for whom "party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

     "Political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance."  *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990).  In *Stott*, the Fourth Circuit adopted a two-part test to discern whether political affiliation could properly be considered.  *Id.* at 141-42 (adopting the reasoning of *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241-42 (1st Cir. 1989) (en banc)).  First, "does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation?  Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?"  *Id.* at 142.  Second, does the particular position "resemble[] a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate

---

to be allowed to speak, write and publish his sentiments on all
subjects, being responsible for the abuse of that privilege."
Md. Const. Decl. of Rts. art. 40.

requirement[?]" *Id*.   This inquiry focuses on the function of the position and not the actual duties of the person who held it. *Id*.   If the two-part test is satisfied, political affiliation may be considered in termination decisions.   *See Jenkins v. Medford*, 119 F.3d 1156, 1162 (4th Cir. 1997) (*en banc*).   This inquiry "is a question of law to be ultimately decided by the courts." *Stott*, 916 F.2d at 134.[5]

2. Grove's Position Description

Grove contends that a dispute of material fact exists about the scope of his responsibilities as Director of TARSA.[6]   He

---

[5] Grove contends that the proper standard is: "if the government can establish that political affiliation is an essential element of an employee's job responsibilities, the government's needs outweigh the rights of the individual employee, and the employee's free speech and free association rights are limited."   Pl.'s Mem. Supp. Mot. Surreply at 1-2 n.1. In support of this standard, Grove explains that the *Branti* Court included the word "essential" in discussing the role of party membership.   *Id*.   Grove has not presented an articulable standard upon which the Court can rely.   Moreover, no court has required a governmental actor to establish that political affiliation is an "essential element" of a public employee's duties.   "Essential" and "appropriate" are not synonymous terms, and requiring Defendants to meet this higher burden is inconsistent with Supreme Court and Fourth Circuit precedent.

[6] Grove incorrectly argues that since Defendants have presented a motion for summary judgment under Rule 56, "the Court must accept Plaintiff's characterization about the nature of his employment."   Pl.'s Opp'n Mem. Summ. J. at 27.   Under Rule 56, the Court must decide whether Grove has presented reliable evidence that raises "a genuine issue as to any material fact." Fed. R. Civ. P. 56(c).   The Court is not *required* to accept Grove's characterization of his evidence, but instead must view undisputed facts in a light most favorable to Grove.   As Defendants provided affidavits, Grove's affidavits and response "must set forth specific facts showing that there is a genuine issue for trial."   Fed. R. Civ. P. 56(e).

argues that his resume and signed job description do not provide a completely accurate portrayal of his job duties.  Grove therefore contends that the Court cannot resolve Defendants' motion for summary judgment without additional discovery about the nature of his job.  Defendants counter that Grove's resume and signed position description from November 2002 provide the Court with a sufficient basis to decide their motion.

The relevant inquiry into whether political affiliation is an appropriate requirement for Grove's position is focused on "the function of the public office in question." *Stott*, 916 F.2d at 142 (internal quotation marks omitted).  Courts examine "the inherent powers of the office as presented in the official job description," only going beyond the description when the plaintiff "demonstrates some systematic unreliability." *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006).  When the plaintiff claims that his actual duties were different from those listed in the job description, "the job description trumps the plaintiff's self-serving account of his actual duties." *Valdizan v. Rivera-Hernandez*, 445 F.3d 63, 66 (1st Cir. 2006).

The position description signed by Grove provides a comprehensive summary of the TARSA Director's responsibilities. It explains TARSA's role in MDE and its environmental goals, and includes a two-page description of the TARSA Director's administrative, programmatic, and supervisory responsibilities. Grove presents his own affidavit and that of Jane Nishida, Secretary of the MDE from March 1995 to April 2002, to contradict

11

the position description and attempt to raise a dispute of
material fact about his responsibilities.  The only fact in the
description that Grove disputes is that he was not responsible
for a particular nonregulatory program, but even he acknowledges
that "it may not involve a material fact."  Pl.'s Opp'n Mem.
Summ. J. at 37.

     More broadly, Grove and Secretary Nishida's affidavits seek
to minimize Grove's responsibilities.  Secretary Nishida explains
that TARSA is a "technical support unit" that is "primarily
responsible for collecting and analyzing factual information."
Jane Nishida Aff. ¶¶ 8-9.  Nishida also states that Grove: did
not have political decisionmaking responsibilities, could only
formulate policy with a superior's approval, could not hire
employees without approval of a hiring official, had little
contact with elected officials, and had less regulatory
responsibility than other MDE Administration Directors.  *Id*. ¶¶
7, 10, 12, 15, 19.  Grove repeats many of the same statements in
his affidavit, and adds that MDE's most recent annual report
included only five pages on TARSA's regulatory activities.  Robin
Grove Aff. ¶ 18.

     But discounting the TARSA Director's impact on the MDE is
not dispositive.  Grove's resume states that he supervised 140
staff as TARSA director and controlled a $16 million annual
budget.  Defs.' Mem. Supp. Summ. J. Ex. 2.  Grove's resume also
explains that he: managed "several State and federally-mandated
environmental and public health-related programs," identified

12

impaired Maryland waters and coordinated MDE programs with other
federal and state agencies, and oversaw Maryland's flood
assistance programs and emergency response programs for
"petroleum, chemical and bioterrorism-related incidents." *Id.*
Grove's claimed inability to influence governmental policy and
programs because he had to consult with superiors is not
material. *See Allen*, 460 F.3d at 946 ("[I]f the inability to set
goals contrary to those of one's superior was the test for
determining the appropriateness of considering political
affiliation in government hiring, no employee under the governor
would be found exempt from First Amendment protection.  Instead,
we look to the ability to offer *input* into government
decisionmaking."). Similarly, Grove's asserted lack of contact
with former Governor Parris Glendening in his hiring, or
Secretary Nishida's lack of knowledge of Grove's political
affiliation is immaterial.  Grove Aff. ¶¶ 3-4; Nishida Aff. ¶¶ 4-
5.  The political affiliation inquiry focuses on whether there is
"a rational connection between shared ideology and job
performance," *Stott*, 916 F.2d at 142, not whether "affiliation is
an essential element" of the position.  Pl.'s Opp'n Mem. Summ. J.
at 31.  Grove and Secretary Nishida's affidavits do not raise a
genuine dispute of material fact.

3. Political Affiliation Inquiry and the TARSA Director Position

    Defendants argue that even assuming the truth of Grove's
assertion--that he was fired solely because he was a Democrat and
former Governor Ehrlich was a Republican--it was rational for the

13

new gubernatorial administration to consider Grove's political affiliation in his dismissal.  The signed position description provides the Court with sufficient evidence to determine whether Grove's political affiliation could be considered in dismissing him as TARSA Director.

The description divides the TARSA Director's role into three areas: (1) Administrative; (2) Programmatic Responsibilities and Technical Direction; and (3) Coordination, Delegation and Representation.  Defs.' Mem. Supp. Summ. J. Ex. 3.  As an administrator, the TARSA Director "[e]stablishes program goals, performance measures, standards, work procedures, and administrative controls for the entire Administration" and is also tasked with developing and implementing "policies, programs, and projects in support of the Administration's and Department's overall missions."  *Id.*  The TARSA Director's programmatic and technical responsibilities are to "[p]rovide policy guidance, leadership and technical direction . . . which includes reviewing work plans and products to ensure that they are consistent with the laws, regulations, policies, programs, and objectives of the Administration and Department."  *Id.*  Although some of these areas relate to "computer modeling" or "technical guidance," the TARSA Director is also charged with developing water quality standards and providing a coordinated response to environmental emergencies.  *Id.*  The TARSA Director is also given the authority to "[r]eview[] and recommend[] Departmental and State positions on pending State and federal legislation" and to coordinate with

"Administration and Department staff to write, justify, and/or evaluate the fiscal impact of legislation." *Id.*

Defendants rationally considered that Grove's role in developing Maryland's water quality standards, coordinating responses to environmental disasters, interpreting state and federal laws, controlling a staff of more than one hundred and a multimillion dollar budget, and his status as one of only five Administration Directors in the 1,100-employee MDE[7] was that of an individual who could "affect the direction, pace, or quality of governance." *Stott*, 916 F.2d at 142. Similarly, Grove's ability to influence MDE legal and fiscal positions on legislation, and his control over regulatory programs made him a "policymaker" and a "communicator." *Id.* Grove's dismissal did not violate the First Amendment or Article 40, therefore, Defendants' motion for summary judgment will be granted.[8]

IV.  Motion for Leave to File Surreply

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." D. Md. R. 105(2)(a). Grove contends that he needs an opportunity to respond to Defendants'

---

[7] Elizabeth A. Forkin, Md. Dep't of Legislative Servs., *2002 Fact Book: Maryland General Assembly* 21 (2003) (approximately 1,100 MDE personnel allocated for fiscal year 2003 budget), http://dls.state.md.us/side_pgs/budget_fiscal/2002%20Fact%20Book.pdf.

[8] As the Court has determined that Grove's dismissal was not constitutionally deficient, Defendants' arguments on Governor Ehrlich and Secretary Philbrick's qualified and MTCA immunity, and Maryland's sovereign immunity are moot. Similarly, as the Court did not address these matters, Grove's request to certify questions on the immunity afforded by the MTCA will be denied.

discussion of: (1) the proper balancing test for considering political affiliation and (2) citation of additional patronage cases.  As the balancing test proposed by Grove is not grounded in Fourth Circuit or Supreme Court precedent, this argument is without merit.  *See infra* n.5.  The patronage line of cases has been sufficiently discussed in the pleadings and accompanying briefs, and a supplemental memorandum would not aid the Court. Accordingly, Grove's motion for leave to file a surreply will be denied.

V.    Conclusion

For the reasons discussed above, Defendants' motion for summary judgment will be granted, and Grove's alternative motion for certification and motion for leave to file a surreply will be denied.


October 10, 2007                      /s/
Date                          William D. Quarles, Jr.
                              United States District Judge

16